Daniel Becker, J.
This is a claim for the appropriation of claimants ’ land pursuant to sections 30 and 349-c of the Highway Law which proceeding is described as City of Yonkers, Park Hill — Nepperhan Avenue Arterial, Westchester County, Map No. 3, Parcel No. 3 and Map No. 4, Parcel No. 4.
The aforesaid map and description of Map No. 3, Parcel No. 3 were filed in the office of the Westchester County Clerk on April *460 30,1968 and the map and description of Map No. 4, Parcel No. 4 was filed in the Westchester County Clerk’s office on June 17, 1968.
The claim was filed with the Clerk of the Court of Claims on July 18, 1968 and with the Attorney-General on July 19, 1968, and has not been assigned or submitted to any other court or tribunal for audit or determination.
The court adopts the descriptions of the appropriated property as shown on the maps and descriptions filed in the Westchester County Clerk’s office, copies of which are attached to the claim and the same are incorporated herein by reference.
The claimants were the owners of the appropriated property by reason of three deeds, the first of which was dated January 24, 1952 from Charles Albert to Charles Albert and Fanny Albert, his wife, and recorded in the Westchester County Clerk’s office in Liber 5064 of Deeds, at Page 243 on January 29, 1952 and which conveyed an undivided one-half interest in and to the property herein described; (2) by a deed dated January 24,1952 from Charles Albert to Stanley Albert and Rose Blaine Albert, his wife, and recorded in the Westchester County Clerk’s office in Liber 5064 of Deeds, at Page 246 on January 29, 1952, and (3) by a deed dated May 24, 1966 from Philip W. Bokelmann and Evelyn Louise Fels to Rose Elaine Albert and recorded in the Westchester County Clerk’s office in Liber 6617 of Deeds, at Page 93 on May 31, 1966.
Prior to the appropriation claimants owned an L shaped parcel of land located on the northeast corner of New Main Street and Nepperhan Avenue, in the City of Yonkers, Westchester County, New York, which property had a frontage of 96± feet on New Main Street and 65.0± feet on Nepperhan Avenue and contained a total of 6,553± square feet. The property was somewhat irregular in shape. The topography was flat and the land was at street grade. The property was located in the downtown business area of the City of Yonkers.
The land was improved with two structures here referred to as Buildings A and B. Building A was a two-story brick and steel frame commercial structure. This building was erected about 1927 and was in fair condition. Building B was a four-story brick store and apartment building’. There was a store on the ground floor and the upper three floors contained a total of' six walk-up apartments. This building was erected in 1910' and was in fair condition.
The taking was a total taking.
*461 The claimants’ appraiser found a before value of $257,000, of which $87,000 was for land and $170,000 for land improvements. Since this was a total taking, he fixed his damages at $257,000.
The State’s appraiser found a before value of $144,000, of which he allocated $74,800 to Building A and $23,100 to Building B for a total of $97,900, and he fixed a land value for 6,585 ± square feet at $7 per square foot, or $46,100 (rounded) for the total of $144,000 for land and buildings. Since this was a total taking he arrived at damages in the sum of $144,000.
The court has viewed the property.
After careful consideration of the testimony at the trial, the appraisals and other exhibits in evidence, the demeanor of the witnesses and the court’s view of the subject property, the court finds as follows:
1. That the highest and best use of the property before the taking was as a commercial store building and apartment building as used at the time of the taking and in accordance with existing zoning regulations.
2. The claimants’ appraiser determined his values by use of the market data approach. To determine his values for land and buildings he utilized a method he denominated as the ‘ ‘ abstraction ” method. By this method he took various so-called comparable sales and determined how much of the purchase price comprised building value. He determined the building value for each sale by use of the reproduction cost less depreciation method. It was noted that there was not set forth in his appraisal any breakdown of values indicating the value of the component parts of the improvements. Upon determination of a building value he deducted that sum from the sale price indicated for the property. The remainder represented his land value for the sale which he adjusted for time, location and desirability and land size to indicate a land value for subject property.
To arrive at his building values he again determined the value of the building on the reproduction cost less depreciation method for the sales offered. He arrived at an unadjusted base value for the building in each of these sales and then adjusted these building values for time, building size and cost, building condition and utility. This gave him a value for the two buildings located on subject property.
It cannot be seriously urged that the above methodology constituted the market data approach. The entire method used by claimants’ appraiser is premised and dependent upon the implementation of the cost less depreciation approach to value. The *462 mere fact that the claimants ’ appraiser denominates this method as market data approach does not impress this court. In the fina) analysis, it is nothing more than another label for a method rejected by the Appellate Division where the property is not a specialty. (Guthmuller v. State of New York, 23 A D 2d 597; Washburn v. State of New York, 26 A D 2d 845, affd. 25 N Y 2d 1007; Evans v. State of New York, 31 A D 2d 565; Richards v. State of New York, 32 A D 2d 591.) This rule is now well established. It seems, however, that the experts who appear before this court either choose to ignore the rule or accord it little weight. Instead, they attempt to obfuscate their use of the cost less depreciation approach by bestowing upon it the dignity of another label or term. It strikes this court that even though appraisal manuals may condone this type of an approach to value, the rejection of this method by the Appellate Division, except in limited instances, is controlling upon this court. The court has no other alternative than to-reject claimants’ expert’s determination of values. Counsel for claimants in his reply memorandum totally fails to support his contention that the appraisal approach adopted by his appraiser is proper. His generalized statement that this is a common and accepted method recognized by the appraisal societies without citing any authority is not in the least persuasive. Counsel must be aware of the limited circumstances when the cost less depreciation approach may be used. It is incumbent upon attorneys who appear in this court to advise their experts on the approaches to value which are probative and acceptable and the various limitations on these approaches imposed by the courts.
3. The court has no other alternative than to accept the State’s appraisal with consideration given to the testimony of the State’s appraiser.
4. The State’s expert relied upon the market data approach to value. His land value was determined by five sales from which he derived a square foot value of $7 per square foot. Four of the five sales were inside plots located in less desirable business areas of Yonkers. In addition, the subject property was larger than four of the five sales offered. The State’s expert failed to accurately reflect the very favorable corner location where subject was located. Moreover, he failed to adequately reflect subject’s superior double frontage over-Sale Nos. A, B, D and E. Sale No. E was comparable in size to subject but must be adjusted upward for location and subject’s better double frontage on two active thoroughfares, under marketability.
*463 The court finds the land value of the entire parcel to be $9.50 per square foot, or $62,255, rounded, for 6,553± square feet of area comprised of Parcel Nos. 3 and 4 combined.
5. On the basis of the State’s whole to whole comparable sales used to value Parcel No, 3, the court finds that Sale Nos. P and H must be adjusted upward for time. The court agrees that Sale No. Gr must be adjusted upward to reflect Parcel No. 3’s superior building space. The court cannot agree with the State’s expert’s conclusion that a minus $48,000 adjustment is warranted under the adjustment for land (dimensions and area). An analysis of these two properties indicates that subject had approximatly 73± feet on New Main Street and 65 ± feet on Nepperhan Avenue. Its plot shape was square as compared to Sale No. Gr’s rectangular shape. It was approximately 65 ± square feet larger than Sale No. Gr. There was no satisfactory explanation offered for such an inordinately large adjustment. While there is no adjustment offered for location, the court feels that in view of the evidence presented Sale No. Gr should be adjusted downward to reflect its better location on Getty Square, a principal business area in the City of Yonkers. Subject property is located close to Getty Square but does not have the favorable exposure that a location on Getty Square has.
The court finds the before value of Parcel No. 3 to be $140,000.
6. In determining the before value of Parcel No. 4, the court has given consideration to the three sales offered by the State. Sale Nos. I and K must be adjusted upward for time to reflect a difference between the date of the sale and the date of vesting of approximately two years and one year, respectively. The court has given the greatest weight to Sale No. I, which is the sale of subject Parcel No. 4 to the claimant Bose Elaine Albert. This sale was recent in time and there is no evidence which would establish that the sale was abnormal in any fashion. Consequently, it is the very best evidence of value since it directly reflects the market value of subject Parcel No. 4 in 1966. (Day v. State of New York, 39 A D 2d 821; Horn v. State of New York, 38 A D 2d 766.) However, this sale must be adjusted upward to reflect an increment for time. There must also be an upward adjustment to reflect the improvements made to this sale after purchase. The -court adopts as accurate the State’s upward adjustment of $1,000 for this factor.
The court finds the value of Parcel No. 4 to be $39,000, rounded.
7. The court finds the before value of the total area of Parcel No. 3 and Parcel No. 4 to be $179,000, as follows:

*464
Parcel No. 3

Land............................ $ 44,775 (R)
Building ........................ $ 95,225
$140,000

Parcel No. 4

$ 17,480 Land ____
$ 21,500 Building ..
$ 38,980
Rounded to $ 39,000
8. The claimants are awarded the sum of $140,000 for all direct damages to Parcel No. 3 with interest thereon from April 30, 1968 to the date of entry of judgment herein and the sum of $39,000 for all direct damages to Parcel No. 4 with interest thereon from June 17, 1968 to the date of entry of judgment herein.
In addition, the claimants are awarded the sum of $2,839.36 as their pro-rated share of the taxes paid on Parcel No. 3 for the year 1968 with interest as provided above and $714.34 as their pro-rated share of the taxes paid on Parcel No. 4 for the year 1968 with interest as provided above.
9. All motions made at trial, upon which decision was reserved, and not disposed of herein are denied.
10. The court is aware that its values are outside the range of testimony, but there is sufficient evidence within the record to support the court’s determinations. (Matter of City of New York [A & W Realty Corp.], 1 N Y 2d 428.)